IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff : | |
| v. : | Criminal Action No. 23-440M |
| MICHAEL ANTHONY KEALTY, : | |
| Defendant. : | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION

Michael Kealty ("Defendant") was a sworn officer with the Smyrna Police Department for approximately six years. Most recently, he was a detective. As a detective, he worked every type of case, from white collar crime to shootings. Most troubling, however, is that he worked "SVU" cases ("Special Victims Unit"). These types of cases cover sexual offenses involving both children and adults. Defendant was sworn to protect the community and bring perpetrators of heinous crime to justice. Instead, he exploited the very people he was sworn to protect—the most innocent members of the community—and used his uniform to become a perpetrator himself.

Since at least 2021, Defendant sexually exploited, and attempted to sexually exploit, multiple children. The United States now seeks his pretrial detention in order to protect the victims and the community at large. Based on the charges, there is a rebuttable presumption that there are no conditions or combination of conditions that can reasonably assure the appearance of the Defendant or the safety of the community if he were to be released. That presumption stands, and this Court should order Defendant detained.

1

I. **Background of the Investigation**

a. The CyberTip

This investigation arose from a CyberTip submitted by Snapchat[1] to the National Center for Missing and Exploited Children ("NCMEC"). Snapchat reported that on or about August 7, 2023, user "jasonkyle221" was in possession of an image deemed to be child sexual abuse material ("CSAM"). The tip was forwarded to the Federal Bureau of Investigation ("FBI") on or about September 18, 2023, and agents confirmed that the image depicts CSAM. In the report, Snapchat provided various identifiers for "jasonkyle221," including the IP address associated with the account/suspect transaction. The FBI confirmed that the IP address is subscribed to Defendant at his residential address and phone number.

b. The Prior Case

Snapchat's report is the second known CyberTip related to "jasonkyle221." On or about September 27, 2020, the FBI received a CyberTip from the NCMEC. According to that report, an anonymous complainant reported that they were talking on Kik[2] with a user named "jasonkyle221." "Jasonkyle221" asked the complainant to send pictures of 15-year-old girls in bikinis, which he told the complainant was not illegal and that he was a police officer. The complainant blocked "jasonkyle221" and reported him to Kik. The FBI conducted an initial investigation into the Kik CyberTip and found that the account was affiliated with multiple login IP addresses.

---

[1] Snapchat is a messaging application for mobile devices. The application provides a way to share moments with photos, videos, and text.

[2] Kik is a free instant messenger application for mobile devices in which users can send text messages, pictures, and videos to other users.

One of those IP addresses was subscribed to by the Town of Smyrna with a service address of 325 W. Glenwood Ave, OFC C, Smyrna, DE 19977. The Smyrna Police Department is located at that address. One of the other IP addresses was subscribed to by "Michael Kealty," with a service address of Defendant's known address and the same phone number as the one in the recent Snapchat CyberTip. Another of the IP addresses was subscribed to by "Michael Kealty," but with a service address of Defendant's parents' residence. It was thus believed that Defendant was "jasonkyle221" on Kik. Without confirmed CSAM or an ability to further contact the complainant, however (they did not leave follow up information), the investigation did not go any further.

   c. <u>Search Warrant Executions in the Instant Case</u>

On September 22, 2023, the FBI executed search warrants for Defendant's person, premises, and vehicles. To facilitate execution of the warrants in the safest manner possible, the FBI coordinated with the Smyrna Police Department to have Defendant called in to the police station under a ruse, whereby law enforcement would search Defendant while another team searched his residence. Defendant was called in by a lieutenant but in doing so, the lieutenant alerted Defendant to the fact that he may be in trouble.

Upon arrival, the Defendant came inside the police station but left two cell phones in his work vehicle, a personal phone and a work-issued phone, both iPhones. Law enforcement searched the vehicle for the phones pursuant to the warrant and found them in the front passenger seat. Upon review of the devices, agents learned that the work phone had been factory reset. According to Apple support online, "[a] factory restore erases the information and settings on your iPhone."[3] In other words, the phone had been wiped. Preliminary forensic review determined the phone was

---

[3] Apple Support, https://support.apple.com/en-us/HT201252#:~:text=A%20factory%20restore%20erases%20the,%2C%20iPadOS%2C%20or%20iPod%20software, last visited Oct. 17. 2023.

3

wiped on September 22, 2023 at approximately 10:27 am Eastern Standard Time—shortly after Defendant was called by the lieutenant and before he reported to the Smyrna Police Department.

The FBI subsequently obtained a search warrant for the "jasonkyle221" Snapchat account. In terms of identification—in addition to the IP address that comes back to Defendant's residence—there are various selfies of the user in the account. The individual in these selfies appears to be Defendant. The returns also indicate what devices accessed the account, and it lists two iPhones: an iPhone 14 and iPhone 12. Defendant's personal phone is an iPhone 14 and his work phone was an iPhone 12. In terms of content, the FBI confirmed the presence of CSAM in the account, which is explained in more detail below.

Defendant was charged via Complaint, on October 13, 2023, with Distribution and Possession of Child Sexual Abuse Material. (D.I. 4.) He appeared before the Honorable Sherry R. Fallon, U.S. Magistrate Judge, the same day. The United States incorporates the allegations from the Complaint herein.

## II.     Legal Standard

Detention is warranted when there is clear and convincing evidence that there are no conditions or combination of conditions that can reasonably assure the safety of the community or other persons, or where there is a preponderance of the evidence that there are no conditions that can reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(e) and (f). In this case, a rebuttable presumption exists that there are no conditions or combination of conditions which can reasonably assure either Defendant's appearance or the safety of the community. That presumption in favor of detention arises from the fact that Defendant is charged with distributing child sexual abuse material. *See* 18 U.S.C. § 3142(e)(3)(E) (imposing a presumption of detention for offenses involving a minor under section 2252(a)(2) of Title 18).

The bar to rebut is low; a defendant "need only come forward with credible evidence conflicting with the presumption." *United States v. Gibson*, 481 F. Supp. 2d 419 (W.D. Pa. 2007); *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985) ("[a] defendant must produce only some evidence to rebut the presumption set forth in section 3142(e)") (internal citation omitted). If Defendant sufficiently rebuts the presumption, the Court must then consider four factors in determining whether detention is warranted: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any other person or the community should the defendant be released.  18 U.S.C. § 3142(g).  Here, each factor weighs in favor of detention.

### III. Why Detention is Warranted

####    a. <u>Nature and Circumstances of the Offense</u>

Defendant's Snapchat account contains the content underlying the charged offenses—and also informs law enforcement that Defendant has been exploiting children well before August 7, 2023.

First, law enforcement confirmed the presence in the account of the CSAM file that was the basis for the August 2023 CyberTip ("CSAM Image 1"). That image depicts a clothed, prepubescent female performing oral sex on an adult male. Second, law enforcement observed an exchange between Defendant and another user wherein Defendant sent a CSAM image to said user ("CSAM Image 2"). The image depicts a prepubescent female lying face down across a male's lap. The girl is completely nude, except for American flag socks on her feet. The male, who is also nude, is spreading the girl's vagina open with his fingers. In sending the picture, **Defendant asks the user, "You good with these kinds pics,"** to which the user replies, "What you think. We into

the same shit," to which **Defendant says, "Haha just making sure."** This exchange took place on August 7, 2023.

In addition to CSAM Image 1 and CSAM Image 2, the Snapchat account contains various conversations between Defendant and other users wherein Defendant expresses his sexual interest in 14–16-year-old girls. One example is below, in a conversation with a Snapchat user between October and November 2022:

> **Jasonkyle221:** Weird question How yng is too yng for you? Like how young are you into?
> **Kisan_Patel:** I mean the youngest I've fucked is 17 and I was 24
> **Kisan_Patel:** Why what about you?
> **Kisan_Patel:** I wouldn't judge
> **Kisan_Patel:** Do you have a younger kink? I'm so interested in this
> **Jasonkyle221:** Yes I do. **And I'm working a high school football game as OT was going to see if ya wanted me to try and sneak ya some pics lol** [4]
> **Jasonkyle221:** Won't be nothing crazy but maybe some cute asses
> **Jasonkyle221:** I def have a ynger kink. Prob like 14
> **Kisan_Patel:** Yes please!
> **Kisan_Patel:** Fuck have you ever had a slutty highschool girl
> **Kisan_Patel:** Or perved or touched on one?
> **Jasonkyle221:** No. I 100% flirt these girls are such flirts and I'm not an ugly dude and not too old so I def think I could get a few but it's so so so risky!!! I would fucking destroy some teen ass!!
> **Kisan_Patel:** God I'd love to do that too
> **Jasonkyle221:** Imma bad person I know it.
> **Kisan_Patel:** I sometimes go to the Asian massage parlors and try to get some womanly touch
> **Kisan_Patel:** I don't think you're a bad person I just think you are a sexual person and that's okay because I am too
> **Jasonkyle221:** Hahahaha yea just feel like a bad person cause they are yng. But I can't help it!! So tiny and tight!! Fresh wet pussy!! Briken open with my big hard cock!

---

[4] The Smyrna Police Department has confirmed that Defendant did, in fact, routinely work special assignments at high school football games.

The Snapchat account also shows that Defendant engaged in conversations with various minor girls. One example of a conversation with a 16-year-old is below. It took place from April 2021 to October 2021. The below are snippets from the conversation, not the full conversation:

> **Jasonkyle221:** Haha yea. Luke is what we call a bi-cuck.... you have any idea what that is? How old are you?
> **Minor 1:** Yeah he told me all about that. I'm 16
> **Jasonkyle221:** Oh wow, you're a yng one.... usually when girls are your age.... they aren't always up for the "weird" stuff lol
> **Minor 1:** Wdym?
> **Jasonkyle221:** Would you be down with having him watch me fuck you while he is in the corner of the room jerking his little cock
> **Minor 1:** Idk
> **Jasonkyle221:** Wel [sic] guess first time for everything.... or you're an innocent one lol
> **Minor 1:** Yeah I'm innocent
> **Jasonkyle221:** Never done anything?
> **Minor 1:** Basically
>
> **[The conversation continues.]**
>
> **Jasonkyle221:** Well you can for sure. Now show off that teen body and help me cum
> **Minor 1:** I don't know.
> **Jasonkyle221:** Just try it
> **Jasonkyle221:** I know I'll like it
>
> **[The conversation continues.]**
>
> **Jasonkyle221:** Well I'm nit [sic] trying to be rude.... but I'm kinda horny.... and wanna JO, snd [sic] you are nit [sic] into that stuff, which is fine!! So I don't wanna be annoying and shit to ya.
> **Minor 1:** Your not annoying. I'm not into that cuz I don't really know you
> **Jasonkyle221:** Well I mean.... that's what makes it most fun.... not knowing each other... we have our fun and go separate ways
>
> **[The conversation continues.]**
> **Jasonkyle221:** Didn't like the pic
> **Minor 1:** It's not that
> **Jasonkyle221:** Just try if ya don't like it we will stop
> **Minor 1:** I'm just not comfortable with my body my self [sic] let alone showing someone else
> **Jasonkyl221:** Then show me some pics of friends or your sister or someone since you don't want me to cum to pics of you like I want to

7

[The conversation continues.]

**Minor 1:** I'm a virgin
**Jasonkyle221:** Mmmm where you live I'll come change thst [sic]
**Minor 1:** Hmmmm I don't know
**Jasonkyle221:** You'd enjoy it¦. I'm telling ya!
**Jasonkyle221:** Why don't ya go take me a sexy pic inside real quick get my cum moving for your cute teen body
**Minor 1:** I'm busy tho
**Jasonkyle221:** Just real quick! Then we can chat more later
**Minor 1:** I don't know. I got three minutes and I don't even know what to do
**Jasonkyke221:** Just take your shirt off and show off those perky teen tits for me. And give me a cute smile
**Jasonkyle221:** Just like your story pic just showing me that cute body

[The conversation continues.]

**Jasonkyle221:** Your virgin? So you prob are so tight
**Minor 1:** Maybe idek
**Jasonkyle221:** Well let's see!! Spread those legs and show off that tight little pussy. I would stretch it out with my cock
**Minor 1:** I'm busy
**Jasonkyle221**: Ohhh damn!!! Well I appreciate you showing off like you did!! You ever suck a cock?
**Minor 1:** No
**Jasonkyle221:** You want to? Where ya from
**Minor 1:** Idek and Ohio
**Jasonkyle221:** Where in Ohio I'm close
**Minor 1:** I go between areas
**Jasonkyle221:** Ohh ok close to PA
**Jasonkyle221:** ?
**Minor 1:** I'm more toward cincy
**Jasonkyle221:** Ohh ok gotcha
**Minor 1:** Yea
**Jasonkyle221:** Would ya want meet?
**Minor 1:** I don't know
**Jasonkyle221:** Well I'd like to experience you!! And your virgin holes

[The conversation continues.]

**Jasonkyle221:** What kinda panties you have on

[The conversation continues.]

8

**Jasonkyle221:** That's ok just take them off totally daddy wants you to bend over fit [sic] him
**Minor 1:** I bet daddy does
**Jasonkyle221:** Mmmm keep making me happy! Be daddy's little slut
**Minor 1:** Anything for you daddy
**Jasonkyle221:** Mmm good girl if you need to make it a vid go ahead

[The conversation continues.]

**Jasonkyle221:** You going to make daddy that vid
**Minor 1:** I can't my dad is up
**Jasonkyle221:** Damn!!! Well spread your legs daddy wants to see that tight pussy!! Then you can go to sleep ok
**Minor 1:** Ok

[The conversation continues.]

**Jasonkyle221:** Good girl
**Jasonkyle221:** Mmmm perfect!!!!
**Jasonkyle221:** You're so ducking right
**Jasonkyle221:** Tight
**Jasonkyle221:** You ever have anything inside you?
**Minor 1:** Nope
**Jasonkyle221:** Even your fingers??
**Minor 1:** Nope never
**Jasonkyle221:** I know you have to go to bed but maybe tomorrow you finger that virgin hole for daddy to watch
**Minor 1:** Yes tomorrow
**Jasonkyle221:** Mmmm perfect!! Good job tonight. You're being a great little slut for daddy
**Minor 1:** Thank you daddy
**Jasonkyle221:** You don't tell anyone right?
**Minor 1:** No ofc night between you and me
**Jasonkyle221:** Good girl keep it that way night

Lastly, the Snapchat account contains various conversations displaying Defendant's tendency toward racially charged sexual violence. In a conversation with spamspam9426, Defendant says, "*I have a few black cucks who like being degraded and told how imma fuck their*

*sexy ni\*\*er[5] sluts like my ancestors did back in the good ole days!!*" In a conversation with danny_many2020, Defendant says, "*I'd rape that slutty ni\*\*er like my ancestors did in NC back when America was great.*" And, in a conversation with slavage15, Defendant says, "*Cute sp\*c[6] is going to be a white Mans whore*" and "*Mmm keep showing them yng sp\*c sluts to this white bull!!!*"

\*\*\*

The above is just a fraction of the content discovered in Defendant's Snapchat account. He spoke with multiple minors, one of whom was a 13-year-old girl Defendant attempted to persuade to send naked pictures of herself. She refused. The account contains other images of naked or scantily clad girls, however. The FBI is still working to determine the age and identity of these girls, and whether the images match any of the minors Defendant was chatting with.

The charged offenses are among the gravest of crimes. Offenders like Defendant prey upon the most vulnerable members of our society. These crimes are so serious that it is presumed from the outset that pretrial detention is warranted. When one factors in the specific circumstances of Defendant's activity, however, the gravity increases exponentially. While charged with distribution, Defendant's own chats make clear that he was engaged in so much more. He attempted—and it appears successfully completed—the production of child pornography. He went beyond viewing or sending images and personally exploited a minor, grooming her for 6 months to produce CSAM for his personal gratification. Moreover, he took his activities offline and physically put himself in locations where he could have access to teen girls—using his uniform to do so. He routinely worked overtime at high school football games and offered to "sneak" pictures of underage girls to share with other predators online.

---

[5] Defendant utilized the full word. The undersigned has sanitized it for purposes of this filing.

[6] Same as above.

Lastly, Defendant engaged in this activity while simultaneously investigating sexual offenses against children as part of his job. During his conversations with Minor 1, Defendant was actively working SVU cases.[7] By virtue of being involved in SVU and child abuse cases, Defendant had access to material that, given the nature of his interests, becomes concerning. For example, child abuse cases often involve medical records, which often include nude images. SVU cases, likewise, often involve nude images of children. Defendant had access to many of those records. The ripple effect of this realization is immeasurable.

The nature and circumstances of Defendant's activities are abhorrent. This factor weighs in favor of detention.

    b. <u>Weight of the Evidence</u>

As indicated by the information provided above, the weight of the evidence in this case is strong. In fact, it is overwhelmingly clear. Defendant's own messages speak for themselves, and it is abundantly clear that the Snapchat account belongs to him because his face is contained all throughout it, in the form of various selfies. Moreover, the IP address affiliated with the account is subscribed to Defendant's real name at his known address and personal phone number.[8] Additionally, the IP address information from the 2020 Kik CyberTip—still involving user "jasonkyle221"—also supports the identity of Defendant as "jasonkyle221," as explained in Section I(b), *supra*.

The weight of the evidence is squarely in favor of detention.

---

[7] The government has verified this information with state prosecutors.
[8] Defendant confirmed his phone number during execution of the September 22 warrants.

      c.   History and Characteristics of the Defendant

The most prominent aspect of Defendant's history is that he was a sworn police officer for six years at the time of the alleged offenses. While public service is normally a mitigating factor for a defendant, in this case, it is aggravating. *See United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("A Defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating [ ] factor, as criminal conduct by a police officer constitutes an abuse of a public position.").

As a detective with the Smyrna Police Department, Defendant was sworn to "high standards of moral and ethical conduct" and to protect the members of his community.[9] Instead, he disregarded his training and his oath and abused his power as a police officer, victimizing the very people he was sworn to protect. He systematically used his job as a way to gain access to teenage girls by volunteering to work overtime at numerous high school football games. His actions were calculated and intentional. Moreover, the repeated nature of Defendant's conduct—going back to at least 2021—shows that the distribution and possession on August 7, 2023 was not a momentary lapse in judgment; rather, it was reflective of his character. Defendant even acknowledged in his chat with "Kisan_Patel" that he knows it is wrong to sexualize children, but he just cannot help it because their "pussy" is just so "tight" and "wet." He knew what he was doing. He knew it was wrong (he was, after all, a police officer). And he knew he was held to a higher standard. Nevertheless, he continued to engage in this criminal behavior.

This factor weighs heavily in favor of detention.

---

[9] Taken from the Mission Statement of the Smyrna Police Department. *See* https://www.smyrnapolice.com/mission.

    d.   <u>Danger to the Community if Defendant is Released</u>

As explained in Section II, *supra*, it is presumed in this case that Defendant is so dangerous that there are no conditions that can reasonably assure the safety of the community if released. That presumption stands, for all the reasons explained above, but also due to his obstructive conduct pre-Complaint.

Defendant wiped his phone before reporting to the police department on September 22 after being called in by his lieutenant. His lieutenant called and told him that there was a "personnel problem" and he needed to come in right away. That call took place at approximately 10:00 a.m. At approximately 10:04 a.m., surveillance observed Defendant get into his personal car with a baby carrier, drive down the road to his parents' house to drop off the baby, and then drive back to his house. At approximately 10:10 a.m., Defendant exited his residence and got into his work vehicle. He conducted the factory reset at approximately 10:27 a.m., while en route to the police department.

Based on the training and experience of law enforcement, factory resets are rare due to the substantial amount of data people tend to keep on their devices, including photos, contacts, text messages, calendar events, notes, and other applications and data that make up a significant part of daily life. Erasing all that data requires a complete restart and thus, a factory reset is typically only performed as a last measure when, for instance, the phone is not working and needs a reboot. Due to this, and knowing the patterns of those who engage in cyber offenses such as child pornography, it is likely that Defendant wiped his device in order to dispose of evidence of the charged offenses. This is obstructionist conduct, and it begs the question of what else Defendant may do to attempt to cover up his offenses if released—especially now that he knows the FBI has found his Snapchat account and is working on identifying the minors.

Defendant will likely argue that the Court can put conditions in place to ensure the safety of the community, such as location monitoring, Internet restriction, or even home incarceration. But this assumes Defendant can be trusted to abide by the conditions this Court sets—an assumption that is belied by the alleged activity. Defendant has already shown what he thinks of authority; he thinks it is something to be abused. He thinks he is above the law. He even bragged to the Kik user in 2020 that he was a police officer. He brazenly engaged in the sexual exploitation of children without fear of the consequences. This Court should have no confidence that he will suddenly become a law-abiding citizen and submit to the authority of this Court; not when his entire life now hangs in the balance, and when he was specially sworn to uphold the law this entire time.

The dangerousness of the defendant weighs in favor of detention.

### IV.   Conclusion

Defendant's actions are a detestable abuse of the public trust. In the most egregious way, he violated the very law he was sworn to uphold. Every single factor for consideration under the Bail Reform Act weighs in favor of his detention. The United States thus respectfully recommends that Defendant be detained.

Respectfully submitted,

DAVID C. WEISS
UNITED STATES ATTORNEY

BY:   /s/ Briana Knox
      Briana Knox
      Assistant United States Attorney